NORTH STAR CAPITAL
ACQUISITIONS, LLC,

       Plaintiff,

vs.                           CASE NO:  3:07-cv-264-J-32MCR

LYNN S. KRIG,

       Defendant,

_____

CAPITAL ONE BANK

       Plaintiff,

vs.                           CASE NO:   3:07-cv-265-J-32MCR

JEAN C. MILLER,

       Defendant,

_____

CAPITAL ONE BANK,

       Plaintiff,

vs.                           CASE NO:  3:07-cv-266-J-32MCR

MARY B. LIVINGSTON,

       Defendant.

_____

## ORDER[1]

These cases are before the Court on counterclaim defendants Robert J. Orovitz and Robert J. Orovitz P.A's (collectively "Orovitz") motions for summary judgment (Doc. 69 in North Star, 3:07-cv-264; Doc. 95 in Capital One, 3:07-cv-265); counterclaim defendant North Star Capital Acquisitions, LLC's Motion for Summary Judgment (Doc. 70 in North Star, 3:07-cv-264); counterclaim defendant Capital One Bank's Motion for Summary Judgment (Doc. 98 in Capital One, 3:07-cv-265), and counterclaim plaintiffs Lynn S. Krig, Jean C. Miller and Mary B. Livingston's Consolidated Response thereto. (Doc. 73 in North Star, 3:07-cv-264; Doc. 102 in Capital One, 3:07-cv-265.) The Court held a hearing on December 17, 2008, the record of which is incorporated herein. (Doc. 76 in North Star, 3:07-cv-264.) Following the hearing, the parties submitted supplemental briefs. (Docs. 80, 81 in North Star, 3:07-cv-264, Doc. 110 in Capital One, 3:07-cv-265.)

On September 25, 2006, North Star Capital Acquisitions, LLC, ("North Star") filed an amended complaint against Lynn S. Krig in County Court, Fourth Judicial Circuit, in and for Duval County, Florida, alleging breach of contract, account stated, and money lent. (See Doc. 2 in North Star, 3:07-cv-264.) On August 21, 2006 and November 7, 2006, Capital One Bank ("Capital One") filed two separate amended

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

complaints against Jean C. Miller and Mary B. Livingston in Florida state court raising substantially similar claims as those alleged in North Star. (See Doc. 2 in Capital One, 3:07-cv-265; Doc. 2 in Capital One, 3:07-cv-266.) In response to the North Star and Capital One complaints, Krig, Miller and Livingston filed separate Answers and Amended Class Action Counterclaims against North Star and Capital One, their former attorney, Robert J. Orovitz, and the attorney's law firm, Robert J. Orovitz, P.A. (See Doc. 3 in North Star, 3:07-cv-264; Doc. 5 in Capital One, 3:07-cv-265; Doc. 3 in Capital One, 3:07-cv-266.) The defendants' counterclaims against the original plaintiffs and the newly added counterclaim defendants, Orovitz, are based in part on violations of the federal Fair Debt Collection Practices Act. See 15 U.S.C. § 1692.

Orovitz timely removed the cases pursuant to 28 U.S.C. §§ 1331, 1441, 1446 on the basis of federal question jurisdiction. This Court denied motions to remand in all cases and ordered a response to counterclaim defendants' earlier motion to dismiss for failure to state a claim. (See e.g. Doc. 31 in North Star, 3:07-cv-264.) The Court subsequently denied counterclaim defendants' motions to dismiss. (Doc. 33 in 3:07-cv-264.) However, the Court decided to require discovery and dispositive motion practice as to the merits of the litigation before entertaining a class certification motion. When a dispute arose regarding the necessity of actual damages for a viable abuse of process claim, Christine Brannon, a counterclaim plaintiff with actual damages, removed her case from state court by agreement of the parties, see Doc.

1 in 3:08-cv-1016, and now is a party herein.

## I.  Legal Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute."  Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor.  Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

## II.  Facts

Counterclaim plaintiffs are purported debtors of North Star and Capital One. Each counterclaim plaintiff was sued in county court in connection with those debts and served with a summons and complaint.  Included with that service was a letter from Robert J. Orovitz and Hayt, Hayt & Landau ("Letter") as well as a document titled

4

"Stipulation for Entry of Final Judgment Execution Withheld" ("Stipulation").  The

Stipulation reads as follows:

|  | IN THE COUNTY COURT IN AND FOR DUVAL COUNTY, FLORIDA |
|---|---|
| CAPITAL ONE BANK, | |
| Plaintiff, | CASE NO: |
| vs. | STIPULATION FOR ENTRY OF FINAL JUDGMENT EXECUTION WITHHELD |
| MARY J. LIVINGSTON[2] | |
| Defendant(s). | |

_____

COME NOW, the parties, and hereby stipulate and agree as follows:

1.  That all of the allegations contained in Plaintiff's Complaint are true and correct.

2.  Plaintiff is entitled to a Final Judgment Execution Withheld against the Defendant(s).

3.  That the Defendant(s) shall comply with all of the terms and conditions as set forth within this stipulation and in the event that any payment is not received within five (5) days from the due date, then that shall constitute a default.

4.  Defendant(s) must make all payments when due.  Payment shall be mailed to Hayt, Hayt & Landau at their office address: 7765 SW 87 Ave, Suite 101 Miami, FL 33173. Payment(s) of more than the amount of the installment due or down payment shall not

_____

[2] Identical stipulations (except the amount owed and post-judgment interest rate) and letters were sent to the other counterclaim plaintiffs.

relieve the Defendant(s) of its obligations to make the next monthly payment on the date agreed to.  In the event that Defendant(s) fail to make any payment when due then Plaintiff shall be entitled to an execution order for the full amount then owing plus costs, interest and reasonable attorneys' fees to be determined by the Court.

5.  It is agreed that Plaintiff shall recover from the Defendant(s) the principal sum of $1,574.02, plus interest in the amount of $687.94, plus court costs in the amount of $_____ plus attorneys fees in the amount of $_____, and post judgment interest at the rate of 20.400% per annum, to be paid as follows: the sum of $_____ due on or before _____ and the sum of $_____ which shall be due on or before the _____ day of each month thereafter until paid in ful.

6.  In the event of Defendant(s) default under the terms of the Stipulation and Plaintiff obtains an execution order, the Defendant(s) hereby agree(s) to waive any garnishment defenses that are waivable under Florida Statute 222.11.

7.  A facsimile or copy of this stipulation may be treated as the original.

8.  That in the event of default, Plaintiff shall be entitled to an Execution Order upon the filing of a verified notice of default and without notice to the Defendant(s).

9.  This agreement has legal terms and has legal implications.  You have the right to have an attorney review it for you.  If you sign this agreement you are voluntarily agreeing to its terms and will be bound by it.

DATED on this _____ day of _____, 20___.

HAYT, HAYT & LANDAU
Attorney for Plaintiff
7765 SW 87 Avenue, Suite 101

Miami, FL 33713

BY:_____                    _____
        Robert J. Orovitz, PA                          Mary B. Livingston
                                                                  _____

See e.g. Doc 95-11 at 4-7 in Capital One, 3:07-cv-265.

The Letter, printed on firm letterhead, read as follows:

> Dear Ms. Livingston:
>
> You have now been served with a complaint by Capital One Bank to collect the outstanding balance on your account. I am enclosing for your review and signature a Stipulation for Entry of Final Judgment Execution Withheld. As you will note, the amount of the monthly payments has intentionally been left blank. Kindly contact my office upon receipt of this letter so that we may mutually agree to the terms and conditions of said stipulation. If we agree on an amount, you will not have to go to court. (This is your last opportunity to resolve this matter without going to court.)
>
> Please understand that any information we obtain will be used for the purpose of collecting this debt.
>
> If you have any questions or wish to discuss this matter in further detail please feel free to contact me.

See e.g. Doc 95-10 at 2 in Capital One, 3:07-cv-265. Counterclaim plaintiffs allege that the inclusion of these additional documents with the required service of process was improper and misleading.

The amended counterclaim complaints consist of the following causes of action: (1) Abuse of Process; (2) violations of the Florida Consumer Collection Practices Act ("FCCPA"); (3) violations of the Federal Fair Debt Collection Practices Act ("FDCPA");

and (4) violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). See Doc. 3 in North Star, 3:07-cv-264; Doc. 3 in Capital One, 3:07-cv-265 and 3:07-cv-266.[3] Counterclaim defendants have filed motions for summary judgment on all counts. Although the counterclaim defendants submitted separate motions, many of the arguments contained in those motions are the same. Accordingly, the Court will deal with all three motions collectively, differentiating between the motions only when so required.

### III. Discussion

#### a. Florida's Litigation Privilege

Counterclaim defendants assert that counterclaim plaintiffs' state law claims are barred because counterclaim defendants are entitled to protection under the litigation immunity privilege. Counterclaim defendants assert that the privilege applies because the events giving rise to the claims occurred in the conduct of the litigation. The litigation privilege in Florida provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings. Levin, Middlebrooks, Moves & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So.2d 606, 608 (Fla. 1994). Florida courts have indicated that the litigation immunity privilege is an affirmative defense. Am. Nat'l Title & Escrow of Fla.,

---

[3] Not all counterclaim defendants are sued under each theory. Capital One has been sued under the abuse of process and FCCPA counts. Orovitz has been sued under the Abuse of Process and FDCPA counts. North Star is sued under all counts.

Inc. v. Guarantee Title & Trust Co., 810 So.2d 996, 998 (Fla. 4th DCA 2002).

The Court previously addressed this argument in the Court's Order denying

counterclaim defendants' motions to dismiss:

> Counterclaim plaintiffs allege that the inclusion of the letter and stipulation with the court required pleadings "was a willful and intentional misuse of process for the wrongful and unlawful purpose of collecting a debt by misleading and misrepresented means." See e.g. Doc. 3 ¶ 33. While the letter and stipulation might be considered "the initiation of settlement negotiations" taken in furtherance of the proceedings, as Orovitz asserts, see e.g. Doc. 8 at 6, that connection is more attenuated here than in typical settlement negotiations. For example, the letter makes several statements that may distinguish it from a direct attachment to the litigation. See e.g. Doc. 3 ¶ 17 ("If we agree on an amount, you will not have to go to court. (This is your last opportunity to resolve this matter without going to court.)) (emphasis in original). While the Florida Supreme Court recently held that the litigation privilege applied to statutory causes of action, it withheld judgment on both when and in what circumstances the privilege would apply. See Echevarria, McCalla, Raymer, Barrett & Frappier, etc., et al., v. Cole, 950 So. 2d 380, 384 (2007); see also id. at 387 (Wells, J., dissenting) (stating that the litigation privilege is inapplicable "when communications are separate from pending litigation and are not necessary in order to pursue future litigation").

(Doc. 33 at 6-7.) Now, the Court must determine, as a matter of law, whether the

litigation privilege bars counterclaim plaintiffs' state-law claims.

The Florida Supreme Court explained the policy reasons for the litigation

privilege when it expanded the privilege to include torts other than defamation:

> In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The

9

rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

Levin, 639 So.2d at 608. The privilege applies to conduct that occurs during settlement negotiations. See Jackson v. BellSouth Telecommunications, Inc., 372 F.3d 1250, 1277 (11th Cir. 2004). However, not every event bearing any relation to litigation is protected by the privilege because, as noted by counterclaim plaintiffs, "[i]f the litigation privilege applied to all actions preliminary to or during judicial proceedings, an abuse of process claim would never exist, nor would a claim for malicious prosecution." See SCI Funeral Services of Fla, Inc. v. Henry, 839 So.2d 702, 706 n.4 (Fla. 3rd DCA 2002) (noting that the Florida Supreme Court has implied that malicious prosecution claims have survived the expansion of the litigation privilege).[4] There appears to be no binding precedent concerning the precise issue presented in this case, that is, whether the litigation privilege protects arguably misleading or deceptive documents which are served with the process and complaint

---

[4] In its supplemental briefing, counterclaim defendants asserted a viable distinction–that a paradigm abuse of process claim would be when a debt collector uses process issued regarding a debt in one case to collect on an entirely different debt in an unrelated case. See generally Doc. 110 at 2-3 (citing Scozari v. Barone, 546 So.2d 750, 752 (Fla. 3d DCA 1989); McMurray v. U-Haul, 425 So. 2d 1208 (Fla. 4th DCA 1983)).

to initiate a case.  Accordingly, the Court must determine this novel state law issue, unaddressed by the Florida intermediate appellate courts, "the way it appears the state's highest court would."  See Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1290 (11th Cir. 1991); see also Freeman v. First Union Nat., 329 F.3d 1231, 1232 (11th Cir. 2003) ("A lack of explicit Florida case law on an issue does not absolve us of our duty to decide what the state courts would hold if faced with it.") (internal citation and quotation omitted).

While the Court is mindful that torts committed during genuine settlement negotiations in an ordinary lawsuit are protected by the litigation privilege in Florida, Jackson, 372 F.3d at 1277, that judicially created privilege must be measured against the statutory right under Florida law to sue debt collectors for alleged unfair collection practices.  "When viewed *in toto*, the purpose and intent of the FCCPA, like the FDCPA, is to eliminate abusive and harassing tactics in the collection of debts." Trent v. Mortgage Elec. Registration Sys., Inc., No. 3:06-cv-374-J-32HTS, 2007 WL 2120262, *4 (M.D. Fla. July 20, 2007), aff'd, 288 F. App'x 571 (11th Cir. 2008).  This is not to say that the litigation privilege is wholly inapplicable to claims under the FCCPA. Cf. Gaisser v. Portfolio Recovery Associates, LLC, 571 F. Supp 2d 1273, 1280 (S.D. Fla. 2008) (claim that filing untimely state suit to collect a debt violated FCCPA is barred by the litigation privilege because the conduct "clearly relates to a judicial proceeding"); Pack v. Unifund CCR Partners, G.P., No. 8:07-cv-1562-T-

27EAJ; 2008 WL 686800, *6 (M.D. Fla. Mar. 13, 2008) (claim that state court lawsuit was a "harassing communication" under the FCCPA barred by litigation privilege because it "necessarily occurred during a judicial proceeding and is related to such proceeding . . ."). Yet, the mere existence of FCCPA litigation does not attach the privilege to every communication between litigants; rather, the communication must be analyzed in light of its relation to the litigation.

In Trent, this Court discussed the facts underlying the Florida Supreme Court's recent holding on the litigation privilege in Echevarria:

> In Echevarria, the Echevarria law firm was retained by lenders to pursue foreclosure proceedings against property owners who had defaulted on their mortgages. The Echevarria firm sent letters to the owners at the outset of the foreclosure proceedings stating that the owners were in default on their mortgages and faced foreclosure unless they reinstated the mortgages by bringing their payments current. The basis of the complaint was that the Echevarria firm violated the FCCPA and FDUTPA by seeking excessive costs in the foreclosure proceedings for title search and examination.

See Trent, 2007 WL 2120262 at *3.

After holding that the litigation privilege applied to statutory causes of action, the Florida Supreme Court in Echevarria remanded the case to the First District Court of Appeal to determine whether the litigation privilege applied under the facts of that case. See Echevarria, 950 So.2d at 385 (Pariente, J., concurring) ("Now that this Court has held that the privilege is applicable in litigation based on both common law and statutory causes of action, the First District should consider on remand

12

whether the privilege covers the reinstatement letters sent in this case."). On remand, the First District inquired of the trial court whether it had made a prior ruling on this issue. The trial court responded:

> In denying the defendant's motion for summary judgment, this Court necessarily ruled that the litigation privilege was no basis for dismissal. This court's decision was predicated on the fact that the false representations made by the defendant were not made in the course of a judicial proceeding. This court necessarily considered the application of the litigation privilege but determined that it had no application in the instant case because the false representations were not made in the course of a judicial proceedings.

See <u>Cole v. Echevarria, McCalla, Raymer, Barrett & Frappier</u>, 965 So.2d 1228, 1231 (1st DCA 2007).[5]

Looking at this still developing area of law, the Court doubts that the Florida Supreme Court would extend the litigation privilege to the conduct at issue in this case. Applying the litigation privilege to the communications here would eviscerate the FCCPA and allow attorney debt collectors to avoid liability under state law for potentially abusive and harassing collection practices simply by filing a lawsuit before attempting to collect a debt. While the line between settlement negotiations inherent in most civil suits and debt collection activities might be hard to discern in some

---

[5] The First District, however, did not reach the question of whether the litigation privilege applied to the communications at issue in <u>Echeverria</u>. After reciting the trial court's response, the First District stated that "[w]ith this explanation, it is now clear that Justice Pariente's question regarding the applicability of the litigation privilege has been answered in a ruling by the trial court, but that the ruling is not presently before this court on review." <u>See</u> <u>Cole</u>, 965 So.2d at 1231.

13

cases, it is not here. The Letter and Stipulation served on counterclaim plaintiffs with the summons and complaint were more akin to an attempt to collect a debt in its entirety, rather than a settlement negotiation;[6] accordingly, the litigation immunity privilege is inapplicable.[7]

### b. Abuse of Process claim

Counterclaim defendants also assert that summary judgment must be granted on counterclaim plaintiffs' abuse of process claim. Counterclaim defendants argue that the claim fails because (1) the Letter and Stipulation were not process and (2) the summons and complaint were used for their intended purpose. The Court dealt with a similar argument in the Order denying counterclaim defendants' motions to dismiss:

> First, Orovitz argues that the claim fails because the process was "merely used to accomplish the result for which it was created," Doc. 8 at 8, and therefore counterclaim plaintiffs cannot allege the required

---

[6] This conclusion is bolstered by contrasting this case with <u>Jackson</u>. In <u>Jackson</u>, the Eleventh Circuit affirmed a trial court ruling that plaintiffs' state law claims for tortious interference and conspiracy to defraud were barred by Florida's litigation privilege. <u>Jackson</u>, 372 F.3d at 1274. The plaintiff's state law claims were based on "allegations that the defendants improperly extracted an unfairly low settlement from the plaintiffs, and negotiated settlement terms that allowed plaintiffs' counsel to take too high a percentage of the settlement funds." <u>Id</u>. at 1275. The Eleventh Circuit held that the privilege applied "[b]ecause . . . the settlement negotiations at issue here-aimed at steering this complex, ongoing, protracted and expensive litigation to a conclusion-occurred during the course of a judicial proceeding <u>and</u> had a substantial relation to that proceeding . . . ." <u>Id</u>. at 1276 (emphasis in original) (citation omitted).

[7] While the Court makes this ruling as a matter of law, the Court reserves the right to revisit this issue at a later stage in the litigation. Moreover, the parties should keep the Court informed as to any developments in this evolving area of Florida law.

collateral coercive effect. However, the purpose of serving the summons and complaint upon a defendant is to give that party notice of the lawsuit and assert the court's jurisdiction over that person, not to initiate settlement proceedings or to collect a debt. See Klosenski v. Flaherty, 116 So.2d 767, 768 (Fla. 1960) (citing Shepard v. Kelly, 2 Fla. 634 (1849). Aside from the fact that the additional material included with the summons and complaint are not process, those materials were arguably not being used for the purpose for which service of the summons and complaint are designed. By alleging that inclusion of the stipulation and letter with process was improper and misleading, counterclaim plaintiffs adequately stated an abuse of process claim.

(Doc. 33 at 7-8.) Counterclaim defendants' have not developed any additional facts through discovery that would change the Court's initial conclusion.

Counterclaim defendants also assert that summary judgment should be granted because the activity occurred concurrent with the issuance of process instead of after. This argument fails. As this Court previously stated in denying the motions to dimiss, "[t]he court itself issues process - service of that process is a post-issuance action. See Fla. R. Civ. P. 1.070." (Doc. 33 at 8.) Nevertheless, counterclaim defendants argue that there was no post-issuance action because the court clerk gave the entire package of materials (complaint, summons, Letter and Stipulation) directly to the process server. This argument is weak to say the least and will not defeat summary judgment.

Counterclaim defendants also argue that the elements of an abuse of process claim have not been established. They assert that the Letter and Stipulation were neither facially misleading nor deceptive and that process was not used for an

improper purpose.  Additionally, North Star and Orovitz assert that there has been no showing that any abuse of process was willful and intentional, a requirement of the claim.  See Peckins v. Kaye, 443 So.2d 1025 (Fla. 2d DCA 1983).  These arguments may well carry the day at trial but they are insufficient to justify granting summary judgment, which requires the Court to consider the evidence in the light most favorable to counterclaim plaintiffs.  The Court will further discuss this issue in relation to the claims made under the FDCPA and FCCPA.  See infra pp. 16-20.

Capital One asserts that counterclaim plaintiffs have failed to offer evidence of actual damages, a necessary requirement to recover for abuse of process. Counterclaim plaintiffs assert that nominal damages are sufficient.  The Court agrees. See Stoler v. Levinson, 394 So.2d 462 (Fla. 3rd DCA 1981) (reversing trial court's order that nominal damages, punitive damages and attorneys fees were insufficient to support claims of abuse of process and malicious prosecution).    Accordingly, summary judgment on counterclaim plaintiffs' abuse of process claim will be denied.

### c.  Federal Fair Debt Collection Practices Act and Florida Consumer Collection Practices Act

Counterclaim plaintiffs have also filed claims pursuant to the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq ("FDCPA") and the Florida Consumer Collection Practices Act, § 559.55-559.785, Florida Statutes (2003) ("FCCPA").  Counterclaim defendants have moved for summary judgment on both

claims. Because of the similarity between the two laws, the Court will analyze both under the same rubric, differentiating between the two only when required.

### i. There is a material issue of fact regarding whether the Letter and Stipulation served on counterclaim plaintiffs is sufficiently misleading under both the FDCPA and FCCPA to render counterclaim defendants liable.

Counterclaim defendants assert that summary judgment is due to be granted on the merits of the FDCPA and FCCPA claims because the conduct at issue does not violate those statutes as a matter of law. As to the FDCPA, counterclaim plaintiffs assert that the communications violate two separate provisions of 15 U.S.C. § 1692e. Specifically, 15 U.S.C. § 1692e(9), prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(13) prohibits "[t]he false representation or implication that documents are legal process." "False or misleading representations under § 1692e are analyzed from the perspective of whether the least sophisticated consumer would be deceived or misled by the debt collectors practices." See Montgomery v. Fla. First Financial Group, Inc., No. 6:06-cv-1639-Orl-31KRS, 2008 WL 3540374, *5 (M.D. Fla. Apr. 12, 2008) (citing Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985)). The relevant part of the FCCPA prohibits the use of a

"communication which simulates in any manner legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency, or attorney at law, when it is not." Fla. Stat. § 559.72(10).[8]

The issue of whether the communications at issue here violated the FDCPA and FCCPA is for the jury. As held by the Eleventh Circuit:

> Although the parties agree on the basic facts of the case, they disagree upon the proper inferences to be drawn from the letters sent by [defendant] to [plaintiff]. Such a disagreement, if reasonable, is one for resolution by the trier of fact, not by the court in a summary judgment context.

See Jeter, 760 F.2d at 1175 (reversing district court's grant of summary judgment in FDCPA case). Seen in the light most favorable to counterclaim plaintiffs, the conduct of Orovitz in their attempt to collect debts on behalf of North Star and Capital One is arguably deceptive under the least sophisticated consumer standard. By including the Letter and Stipulation (which was printed using the case style) with the summons and the complaint served by the process server, the Letter and Stipulation were arguably given an "official imprimatur" that they do not actually possess and the "least sophisticated consumer" could have been misled as to his or her legal options.

Counterclaim plaintiffs cite to portions of the Livingston, Krig, Miller and Brannon depositions to prove this point. Miller testified as to her reaction to receiving

---

[8] Counterclaim plaintiffs also argue that some of the communications violated Fla. Stat. § 559.72(9). That argument is addressed infra.

the Letter and Stipulation:

> Again, mainly the feeling on my part that I either had to deal with the Orovitz firm or go to court. As I now understand, I was basically already in court, in a sense, but I felt that if it came to that, I didn't know what might happen, I didn't know if things could be taken away from me, for example, to settle this debt. I felt that it was – it was a complete unknown. And I felt that my only other alternative was to deal with Mr. Orovitz and try to send whatever money they told me to send. I felt it was an either or.

(Miller Dep. 78:5-17, July 23, 2008). Other counterclaim plaintiffs testified to similar misunderstandings of the Letter and Stipulation and the coercive effect of receiving these documents from a process server along with the summons and complaint. (Livingston Dep. 69-70, Aug. 27, 2008; Krig Dep. 70-72, 77:3-11, July 24, 2008; Brannon Dep. 66: 11-19, Sep. 15, 2008.) It is true that the "least sophisticated consumer" standard is objective and "unrealistic, peculiar, bizarre and idiosyncratic interpretations" of these documents is to be rejected. See Durkin v. Equifax Check Servs., 406 F.3d 410, 414 (7th Cir. 2005). However, the Court cannot say as a matter of law that service of the Letter and Stipulation along with the summons and complaint, did not violate the FDCPA or FCCPA.

Other courts agree. See e.g., Pescatrice v. Orovitz, P.A., 539 F. Supp 2d 1375, 1381 (S.D. Fla. 2008).[9] In Pescatrice, Orovitz moved for summary judgment, claiming

---

[9] The name of the defendant in Pescatrice is not a coincidence; the collection practices of Mr. Orovitz's firm appear to be a frequent subject of litigation in the federal courts (with mixed results). See Pescatrice, 539 F. Supp 2d at 1376; see also Gaisser v. Portfolio Recovery Associates, LLC, 593 F. Supp 2d 1297 (S.D. Fla. 2009);

in part that documents remarkably similar to those in this case were not deceptive as a matter of law. Id. at 1380. Plaintiff also moved for summary judgment. Id. The Court denied both motions on that ground, but the reasoning as to its denial of defendants' motion is relevant:

> Defendants' best argument is that under the facts of this case, Plaintiff herself was not misled by the document and therefore it is not "deceptive" under the FDCPA. Upon receiving the letter, she referred the matter to her attorney. However, Plaintiff argues that she sent it to her attorney because she did not understand the letter, found it "vague," "confusing," "questionable," and "did not look legit." Upon a review of the record before the Court, I cannot conclude as a matter of law, that the letter and proposed stipulation, taken together, are not deceptive under Sections 1692e or 1692f of the FDCPA to the "least sophisticated consumer."

Id. (internal citations omitted). In denying summary judgment in Pescatrice, the court noted that the letter and proposed stipulation were not served with the complaint. Id. at 1380. That counterclaim defendants did serve the Letter and Stipulation with the summons and complaint in this case make those documents arguably even more deceptive than those in Pescatrice. Accordingly, there is a genuine issue of material fact whether the documents were deceptive to the "least sophisticated consumer." Jeter, 760 F.2d at 1175.

### ii.    Whether North Star was a debt collector under the FDCPA.

North Star argues that counterclaim plaintiffs' claim under the FDCPA should

---

Hinds v. Crediqy Receivables, Inc., No. 6:07-cv-1081-Orl-28GJK, 2008 WL 5381345, *1 (M.D. Fla. Dec. 23, 2008).

be dismissed because it is a creditor and not a debt collector as defined by the FDCPA. "The FDCPA imposes liability on 'debt collectors' who fail to comply with its provisions when collecting a 'debt.'" Buckman v. Am. Bankers Ins. Co. of Fla., 115 F.3d 892, 894-95 (11th Cir. 1997) (citing 15 U.S.C. § 1692k). The FDCPA defines a debt collector as "[a]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . ." 15 U.S.C. § 1692a(6). The FDCPA excludes from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). "Thus, a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Belin v. Litton Loan Servicing, LP, No. 8:06-cv-760-T-24EAJ, 2006 WL 1992410, *2 (M.D. Fla. Jul. 14, 2006) (internal citation and quotation omitted).

It is undisputed that North Star bought the debt of counterclaim plaintiffs after it had already become delinquent. (Doc. 70 at 19.) This fact alone would seem to establish North Star's status as a "debt collector." See Belin, 2006 WL 1992410 at *2. Nevertheless, North Star argues that, "the fact that North Star was an assignee

of a debt already in default at the time of the assignment does not convert North Star into a debt collector." (Doc. 70 at 22.) North Star has provided some support for this argument. See Scally v. Hilco Receivables, LLC, 392 F. Supp 2d 1036, 1037 (N.D. Ill. 2005). However, the Court's reading of Scally shows that the defendant in that case may in fact have been a debt collector under the FDCPA. See id. ("At first blush, Defendant . . . falls neatly into this category, as it acquired Scally's debt . . . after she defaulted."). Instead, the issue in Scally was whether the defendant could be held vicariously liable when it did not act directly to collect the plaintiff's debt. Id.

The reasoning in Scally does not apply to this case. One of the factors that the Scally court seemed to recognize as dispositive was that the third-party debt collector in that case was not the defendant's attorney. See e.g. id. at 1039 ("However, the cases on which Scally relies stem . . . from a genuine concern that imposing liability on debt collectors for the actions of retained counsel was necessary-in light of the FDCPA's original 'all purpose' exemption for attorneys-to protect debtors from predatory or harassing collectors who might otherwise act, through their attorneys, with impunity."). That is obviously not the case here - Mr. Orovitz is an attorney representing North Star in its collection efforts.[10] Additionally, this counterclaim arose from North Star suing Krig through its lawyer, Orovitz. This distinguishes this case

---

[10] Indeed, North Star's lawyers invoked the attorney-client privilege during discovery as to communications between North Star and Orovitz.

22

from <u>Scally</u> because "[m]any courts have recognized that a company may be held vicariously liable for the collection activities of attorneys working on its behalf." <u>See</u> <u>Schutz v. Arrow Financial Services, LLC</u>, 465 F. Supp 2d 872, 875 (N.D. Ill. 2006) (collecting cases).[11] Therefore, North Star is a "debt collector" under the FDCPA.

### iii. Fla. Stat. § 559.59(9)

Under the FCCPA, a debt collector cannot "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.59(9). Through the Stipulation, Capital One had a practice of inserting a post-judgment interest rate far above the statutory post-judgment rate of interest. <u>See</u> <u>e.g.</u> Doc. 95-11 at 2. Counterclaim plaintiffs assert that Capital One's "attempt to collect interest rates in excess of Florida's post-judgment and usury laws" violates Fla. Stat. § 559.59(9). Capital One contends that summary judgment should be granted on this issue because Florida law allows parties to contract for a post-judgment interest rate exceeding that set by law.[12]

Florida law provides that "[o]n December 1 of each year, the Chief Financial Officer shall set the rate of interest that shall be payable on judgments or decrees for

---

[11] North Star attempts to make a distinction based on the fact that it hired Orovitz indirectly through a third-party servicing company. North Star has not shown how this distinction is legally relevant.

[12] North Star used the statutory post-judgment interest rate.

the year beginning January 1 . . . . Nothing contained herein shall affect a rate of interest established by written contract or obligation." Fla. Stat. § 55.03(1). Thus, under Florida law, Capital One was entitled to make a contractual offer regarding the interest rate, which, if signed by both parties, would have set forth "a rate of interest established by written contract or obligation." See id.; see also Whitehurst v. Camp, 677 So.2d 1361 (1st DCA 1996) aff'd, 699 So.2d 679, 684 (Fla. 1997).

Counterclaim plaintiffs attempt to distinguish Whitehurst by asserting that a contractual post-judgment interest rate is valid only if established in the underlying contract. In Whitehurst, the trial court set post-judgment interest at the statutory rate of 8 percent per annum, rather than the 10 percent interest rate provided in the underlying agreement. Whitehurst, 677 So.2d at 1362. The Whitehurst court held that "because a judgment is an obligation separate from the underlying contractual debt, to contractually set the rate of post-judgment interest the parties must expressly provide that the agreed interest rate also applies to any judgment or decree entered on the underlying debt." Id. at 1363. By specifically setting forth a proposed rate of post-judgment interest in the Stipulation, counterclaim defendants in effect made an offer to override the statutory rate; Whitehurst does not prohibit this. While the means through which that offer was made is arguably deceptive to the least sophisticated consumer and may support counterclaim plaintiffs' other claims in this litigation, the act of proposing a higher rate of post-judgment interest than that provided by statute

is insufficient, standing alone, to establish an independent FCCPA violation under § 559.59(9).[13]

###    iv.    Counterclaim defendants' other FDCPA and FCCPA arguments.

Counterclaim defendants assert that summary judgment is due to granted based on the bona fide error defense.  The FCCPA provides that "[a] person shall not be held liable in any action brought under this section if the person shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  Fla. Stat. § 559.77(3).  The FDCPA has an almost identical provision.  See 15 U.S.C. § 1692k(c).  However, counterclaim defendants' "intent and whether the error was bona fide are classic issues of fact, inappropriate for resolution on summary judgment."  See Niven v. National Action Financial Services, No. 8:07-cv-1326-T-27TBM, 2008 WL 4190961, *3 (M.D. Fla. Sept. 10, 2008) (citing Sparks v. Phillips & Cohen Associates, Ltd., No. 07-0477-WS-C, 2008 WL 2540679, *11 (S.D. Ala. June 20, 2008)).

North Star also argues that counterclaim plaintiffs have not asserted that any actual damages are attributable to North Star.  However, both the FCCPA and the

---

[13] Accordingly, the Court need not reach counterclaim defendants' argument that it lacked the "actual knowledge" required to establish liability for a violation of Fla. Stat. § 559.59(9).  To the extent that North Star argues that the "actual knowledge" requirement also applies to § 559.59(10), that argument is rejected.

FDCPA provide for both statutory and actual damages. <u>See</u> 15 U.S.C. § 1692k(a)(2)(A); Fla. Stat. § 559.77(2). While North Star may be entitled to a set-off, post-trial, of any debt each consumer is found to have owed, the existence of that debt does not mandate summary judgment on these claims.[14]

### e. Florida Deceptive and Unfair Trade Practices Act claim

North Star argues that summary judgment should be granted on counterclaim plaintiffs' FDUTPA claim because (1) actions taken pursuant to a debt collection proceeding cannot constitute an unlawful act or practice "in the conduct of any trade or commerce"; and (2) counterclaim plaintiffs cannot qualify as a "consumer" as defined under FDUTPA.

While counterclaim defendants rely on <u>dicta</u> in the undersigned's opinion in <u>Trent</u> to support their motion, there is another case decided in this Court that is more analogous. <u>See</u> <u>Losure v. Capital One Services, Inc.</u>, No. 2:05-cv-502-FTM-29SPC, 2006 WL 166520, *3 (M.D. Fla. Jan. 23, 2006) (finding that holder of credit card stated a FDUTPA claim against third-party debt collector). Judge Steele's reasoning in <u>Losure</u> at the motion to dismiss stage is equally applicable here and summary

---

[14] Orovitz alone requests summary judgment on counterclaim plaintiffs' claim that the language in the Stipulation waiving the statutory exceptions to garnishment violated 15 U.S.C. § 1692. It is not clear that counterclaim plaintiffs are still pursuing this argument. In any event, the Court finds that such a waiver, standing alone, is not an independent violation capable of sustaining any of counterclaim plaintiffs' causes of action. <u>See</u> <u>Portfolio Recovery Associates LLC v. Quintana</u>, Appeal Case No. 2007 - 000003 (Fla. 10th Cir Ct January 15, 2008).

judgment will be denied on counterclaim plaintiffs' FDUTPA claim.

Accordingly, it is hereby

**ORDERED:**

1. Counterclaim defendants Robert J. Orovitz and Robert J. Orovitz P.A's motions for summary judgment (Doc. 69 in North Star, 3:07-cv-264; Doc. 95 in Capital One, 3:07-cv-265) are **GRANTED IN PART** (on the garnishment issue) and otherwise **DENIED**, consistent with this Order.

2. Counterclaim defendant North Star Capital Acquisitions, LLC's Motion for Summary Judgment (Doc. 70 in North Star, 3:07-cv-264) is **DENIED**, consistent with this Order.

3. Counterclaim defendant Capital One Bank's Motion for Summary Judgment (Doc. 98 in Capital One, 3:07-cv-265) is **GRANTED IN PART AND DENIED IN PART**, consistent with this Order.

4. Unless, by motion, any party seeks Court intervention,[15] the Court hereby

---

[15] Ordinarily, class discovery is necessary to adequately brief a class certification motion. Upon reflection, the Court does not see why this is necessarily so here. The list of debtors already compiled by counterclaim defendants establish an estimate through which counterclaim plaintiffs can attempt to show numerosity (and indeed, there was an intimation at the preliminary pretrial conference that the numerosity issue might be the subject of a stipulation). Many of the other issues typically raised at the class certification stage should have been adequately addressed during merits discovery. However, if any party believes class discovery is necessary, that party may, after consultation, file a motion seeking it, identifying the specifics of the proposed discovery.

establishes the following deadlines for class certification:

a. Counterclaim plaintiffs should file a consolidated motion for class certification of not more than 30 pages by **May 20, 2009**.[16]

b. Counterclaim defendants should file their responses by **June 19, 2009**. To the extent possible, those responses should be coordinated so as to omit needless repetition of the issues and prevent excess pages.

c. Counterclaim plaintiffs may, **but are not required to**, file a consolidated reply of not more than fifteen pages. This reply should be filed by **June 29, 2009**.

d. This case is **SET** for hearing and oral argument on counterclaim plaintiffs' motion to certify class on **Monday, July 20, 2009** at **10:00 a.m.** in Courtroom 10D, Tenth Floor, United States Courthouse, 300 North Hogan Street,

---

[16] Counterclaim plaintiffs should consider submitting a trial plan in support of their motion to certify:

> [T]he proposal of a workable trial plan will often go a long way toward demonstrating that manageability concerns do not excessively undermine the superiority of the class action vehicle. Moreover, there is a direct correlation between the importance of a realistic, clear, detailed, and specific trial plan and the magnitude of the manageability problems a putative class action presents. We therefore recommend that district courts make it a usual practice to direct plaintiffs to present feasible trial plans, which should include proposed jury instructions, as early as practicable when seeking class certification.

Vega v. T-Mobile USA, Inc., — F.3d —, 2009 WL 910411, n. 20 (11th Cir. 2009).

Jacksonville, Florida.[17]

      **DONE AND ORDERED** at Jacksonville, Florida, this 21st day of April, 2009.

_Timothy J. Corrigan_
TIMOTHY J. CORRIGAN
United States District Judge

jcd.
Copies:
counsel of record

---

[17] The parties are advised that photo identification must be presented when entering the Courthouse. Counsel only may bring cell phones and laptops into the Courthouse for the hearing.